IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MILLER,<br><br>      Plaintiff,<br>v.<br><br>ELBAUM,<br><br>      Defendant. | REPORT AND RECOMMENDATION<br>RE: ECF 9<br>AND<br>ORDER DENYING ECF 10<br><br>Case No. 2:22-cv-00587-HCN-CMR<br><br>District Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Cecilia M. Romero |

This matter is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) (ECF 8). Before the court is Defendant Yaki Elbaum's (Defendant or Elbaum) Motion to Dismiss (ECF 9) regarding Plaintiff Gregory Ryan Miller's (Plaintiff or Miller) Complaint (ECF 1). Also before the court is Plaintiff's Motion for Expedited Discovery (ECF 10). Having carefully considered the relevant filings, the court finds that oral argument is not necessary and will decide this matter on the basis of written memoranda. *See* DUCivR 7-1(g). For the reasons set forth below, the undersigned RECOMMENDS that the court GRANT Defendant's Motion to Dismiss (ECF 9). In addition, the court DENIES Plaintiff's Motion for Expedited Discovery (ECF 10) as moot.

### I.  BACKGROUND

Miller brings suit against Elbaum, the alleged President of NPEC, LLC (NPEC), relating to a state court case filed in the Third District Court, Salt Lake County entitled *NPEC v. Miller*, Case No. 130905131 (ECF 1 ¶ 21).[1] The *NPEC v. Miller* case was resolved through the execution

---

[1] The court finds that the proceedings in *NPEC v. Miller* directly relate to the case at hand and therefore takes judicial notice of the filings in this case. *See Garcia-Rodriguez v. Gomm*, 169 F. Supp. 3d 1221, 1227 (D. Utah 2016) ("[A]lthough not obliged to do so, a court in its discretion may 'take judicial notice of publicly-filed records in [federal] court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.'" (quoting *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007))).

of a Settlement Agreement between Miller and NPEC (ECF 1 ¶ 25, ECF 1-9). On January 11, 2016, Third District Court Judge Andrew Stone (Judge Stone) issued an Order rejecting Miller's challenges to the enforceability of the Settlement Agreement and entering summary judgment against Miller and in favor of NPEC in the amount of $283,961.55 (ECF 9-2). Miller appealed the Jan. 11, 2016 Order, and on November 18, 2016, the Utah Court of Appeals dismissed this appeal with prejudice (ECF 9-4) On April 4, 2017, Miller filed a state court case against Elbaum and other parties (2017 Lawsuit) (ECF 9-5), which Judge Stone consolidated with *NPEC v. Miller* (ECF 9-6). On July 21, 2017, Judge Stone issued an Order dismissing the complaint in the 2017 Lawsuit with prejudice (ECF 9-7). On May 10, 2018, the Utah Court of Appeals affirmed the July 21, 2017 Order in its entirety, including findings relating to expired NPEC's eligibility to sue and enter into the Settlement Agreement with Miller (ECF 9-8). *See NPEC LLC v. Miller*, 2018 UT App 85, ¶¶ 4, 12, 427 P.3d 357, 359, 361 (Utah Ct. App. 2018).

On November 17, 2020, in connection with its efforts to collect upon the judgment entered by Judge Stone on January 11, 2016, NPEC acquired all of the following:

> [Miller's] non-exempt equitable claims, legal claims, demands, debts, rights to sue, causes of action, offsets, lawsuits, and/or chose in action of any kind, nature and description including without limitation all non-exempt equitable claims, legal claims, demands, debts, rights to sue, causes of action, offsets, lawsuits, and/or chose in action of any kind, nature or description against any or all of the following: (i) NPEC, LLC and any of its owners, officers, employees, contractors, or agents; (ii) Jack Elbaum; (iii) Fluent Home, LLC and any of its owners, officers, affiliated companies, parents, subsidiaries, employees, contractors, or agents; (iv) Graham Wood; (v) Kristi Bettridge; and/or (vi) Michael Best & Friedrich, LLP and any of its attorneys, employees or agents; excepting only such claims as Miller has asserted in the matter of Advice Media v. Miller.

Certificate of Sale, Execution, Personal Property, executed Nov. 17, 2020 (ECF 9-9).

On May 6, 2022, Miller filed another state court case (Case No. 220902722) against NPEC on the grounds that Elbaum "is without First Amendment rights" because of a deportation order

against him (2022 Lawsuit) (ECF 9-10 at ¶ 49), which was also consolidated with *NPEC v. Miller*.[2] On November 1, 2022, Judge Stone dismissed the complaint in the 2022 Lawsuit with prejudice (ECF 9-11). On November 2, 2022, Judge Stone entered a vexatious litigant order against Miller (ECF 9-12). Miller has filed nearly twenty state appellate court proceedings in the Utah Court of Appeals and the Utah Supreme Court relating to *NPEC v. Miller*.[3] The most recent appellate matter before the Utah Court of Appeals was decided on June 8, 2023, and a Notice of Remittitur was issued on July 19, 2023 (Case No. 20230445-CA).

On September 9, 2022, Miller filed his Complaint (ECF 1) in this matter requesting declaratory judgment that: (1) Elbaum "lost his First Amendment right to petition American courts for the redress of grievances upon the 2000 entry of the final order adjudicating his deportation order"; (2) NPEC's "period of existence terminated on January 1, 2009 pursuant to the express terms of its articles of organization"; and (3) Paragraph 7(a) of the Settlement Agreement "transacted pursuant to *NPEC v. Miller* is unenforceable as a matter of public policy" (ECF 1 at 17). On November 11, 2022, Elbaum filed his Motion to Dismiss (ECF 9) pursuant to Federal Rule of Civil Procedure 12(b)(1) arguing the court lacks subject matter jurisdiction and Miller lacks standing. Miller thereafter filed an Opposition (ECF 14), and Elbaum filed a Reply (ECF 15). On November 18, 2022, Miller filed his Motion for Expedited Discovery (ECF 10), which Elbaum opposed (ECF 11). Miller then replied (ECF 12) and submitted this matter for decision (ECF 13).

---

[2] Although Defendant did not attach this consolidation order as an exhibit to the Motion to Dismiss, the court has taken judicial notice of the proceedings in *NPEC v. Miller*, which reflect that this consolidation order was entered on October 11, 2022 (Case No. 220902722).

[3] *See, e.g.*, 20150346-CA, 20150756-CA, 20150838-CA, 20150919-SC, 20160090-CA, 20160407-CA, 20160090-CA, 20160663-CA, 20170517-CA, 20170635-CA, 20180438-SC, 20180553-CA, 20190653-CA, 20190726-CA, 20200904-CA, 20210851-CA, 20220981-SC, 20230216-SC, and 20230445-CA.

## II.  LEGAL STANDARDS

Defendant seeks dismissal of the Complaint pursuant to Rule 12(b)(1) for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A challenge to subject matter jurisdiction may be either facial or factual. *See Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1072 (10th Cir. 2004). Where, as here, Defendant brings a facial challenge to subject matter jurisdiction, the court accepts the allegations of the Complaint as true. *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001). Plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *See Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014). Because Plaintiff is proceeding pro se, the court construes the Complaint liberally and holds it to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, "[t]his liberal treatment is not without limits, and 'this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants.'" *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)). The court reviews the Complaint in light of these standards.

## III.  DISCUSSION

### A.  Defendant's Motion to Dismiss

#### 1.  *Rooker-Feldman* Doctrine

Defendant first argues the Complaint is subject to dismissal under the *Rooker-Feldman* doctrine. "The *Rooker-Feldman* doctrine provides that federal courts, other than the United States Supreme Court, lack jurisdiction to adjudicate claims seeking review of state court judgments." *Chamberlain v. Crown Asset Mgmt.*, 608 F. Supp. 3d 1091, 1101 (10th Cir. 2022) (quoting *Bisbee*

*v. McCarty*, 3 F. App'x 819, 822 (10th Cir. 2001)). This means that "[f]ederal district courts do not have jurisdiction to review state court judgments or claims inextricably intertwined with them." *Id.* (quoting *Bear v. Patton*, 451 F.3d 639, 641 (10th Cir. 2006)). Stated otherwise, "[i]f adjudication of a claim in federal court would require the court to determine that a state court judgment was erroneously entered or was void, the claim is inextricably intertwined with the merits of the state court judgment." *Id.* (quoting *Bisbee*, 3 F. App'x at 822).

Plaintiff responds that the *Rooker-Feldman* doctrine is inapplicable because the state appellate proceedings in this case are not yet final (ECF 14 at 4). To support this argument, Plaintiff relies on *Erlandson v. Northglenn Municipal Court*, 528 F.3d 785 (10th Cir. 2006). In *Erlandson*, the Tenth Circuit held that "the *Rooker-Feldman* doctrine is confined to cases brought *after* the state proceedings have ended." *Erlandson*, 528 F.3d at 788 n.3 (emphasis added) (holding *Rooker-Feldman* doctrine applied where federal suit was filed eight days after denial of a state supreme court petition for a writ of certiorari) (quoting *Mann v. Boatright*, 477 F.3d 1140, 1145 (10th Cir. 2007)). The court further clarified that the *Rooker-Feldman* doctrine "applies only where state court appeals process has run its full course." *Id.* (citing *Guttman v. Khalsa*, 446 F.3d 1027, 1031-32 (10th Cir. 2006) (holding *Rooker-Feldman* doctrine did not apply where federal suit was filed while petition for certiorari to state supreme court was pending)).

Here, Plaintiff filed suit on September 9, 2022, months before the 2022 Lawsuit was dismissed on November 1, 2022, and nearly a year before resolution of Plaintiff's related state appeals. In the most recent state appellate case, the Utah Court of Appeals did not issue a notice of remittitur until July 19, 2023. Although it does not appear that state proceedings are currently pending, Plaintiff brought this federal case before state proceedings in *NPEC v. Miller* had ended and long before the state court appeals process had run its full course in Case Nos. 20220981-SC,

5

20230216-SC, and 20230445-CA. Defendant does not address or attempt to distinguish the *Erlandson* case but rather reasserts the argument that Plaintiff is seeking to overturn a state court judgment (ECF 15 at 1–3). Because this federal suit was not brought after state court proceedings had ended, the court agrees with Plaintiff that the *Rooker-Feldman* doctrine does not apply in this case.

        2.        Federal Question Jurisdiction

Defendant next argues the Complaint must be dismissed because Plaintiff has failed to show subject matter jurisdiction. Federal courts "are courts of limited subject-matter jurisdiction." *Gad v. Kan. State Univ.*, 787 F.3d 1032, 1035 (10th Cir. 2015). "The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). Section 1332 provides for diversity jurisdiction for cases involving diversity of citizenship between the parties and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332. Because Plaintiff does not allege diversity jurisdiction, the court focuses its analysis federal question jurisdiction.

Section 1331 provides for federal question jurisdiction for cases arising under federal law. 28 U.S.C. § 1331. For federal question jurisdiction under § 1331, "the plaintiff's 'well-pleaded complaint' must establish one of two things: 'either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Firstenberg v. City of Santa Fe*, 696 F.3d 1018, 1023 (10th Cir. 2012) (quoting *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006)). "The 'vast majority' of cases in which parties establish federal question subject matter 'are those in which federal law creates the cause of action.'" *Weber County, Utah v. Purdue Pharma, L.P.*, No. 1:18-cv-00089-RJS, 2018 WL 3747846, at *4 (D. Utah Aug. 7, 2018) (quoting *Merrell Dow Pharm., Inc. v.*

6

*Thompson*, 478 U.S. 804, 809 (1986)). However, "a case may also arise under federal law where there exists an 'embedded' federal issue if the 'plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Id.* (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006)). To establish federal question jurisdiction under the *Grable* test, "the proponent must show that a state law claim [1] 'necessarily raise[s]' [2] a substantial federal issue that is [3] 'actually disputed,' and [4] 'which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *Id.* (quoting *Grable & Sons Metal Products v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005)). The Tenth Circuit has cautioned that this "branch of federal question jurisdiction is exceedingly narrow." *Id.* (quoting *Gilmore v. Weatherford*, 694 F.3d 1160, 1171 (10th Cir. 2012)). The court addresses each prong of the *Grable* test below.

> i. The Complaint does not necessarily raise substantial federal issues

Plaintiff's three claims for declaratory relief raise the following issues: (1) whether Elbaum lost his First Amendment right to petition the court for redress of grievances upon entry of his 2000 final deportation order; (2) whether NPEC's existence terminated on January 1, 2009 under its articles of organization; and (3) whether Paragraph 7(a) of the Settlement Agreement is unenforceable under public policy (ECF 1 at 17). As an initial matter, the second claim does not reference any federal law or issue, but rather appears to be a state law claim involving interpretation of state business law.

Plaintiff appears to assert that the first claim raises issues relating to federal immigration policy but does not identify a specific policy at issue and instead merely makes conclusory references to "immigration matters" (*id.* ¶ 46). The Complaint repeatedly references 8 U.S.C. § 1231(a)(7), which provides, "[n]o alien ordered removed shall be eligible to receive authorization

7

to be employed in the United States" (ECF 1 ¶¶ 20, 64), and cites to federal criminal statutes penalizing harboring aliens (8 U.S.C. § 1324), hindering or preventing apprehension of offenders (18 U.S.C. § 3), and concealing commission of a felony (18 U.S.C. § 4) (*id.* ¶¶ 28–30). Other than reciting the language of these statutes, Plaintiff fails to adequately explain how these statutes provide a basis for his claims. While the third claim alleges the Settlement Agreement is unenforceable due to federal public policy penalizing the harboring of criminal activity, Plaintiff also references state public policy as a basis for the unenforceability of the Settlement Agreement on the same grounds, suggesting this claim could be resolved based on state contract law (*id.* ¶¶ 66–68). Thus, none of Plaintiff's claims necessarily raise federal issues.

      *ii.* *Plaintiff fails to identify actually disputed substantial federal issues*

"An issue is 'actually disputed' when 'on the merits, it is the central point of dispute.'" *Utah Housing Corporation v. Country Pines*, 541 F. Supp. 3d 1288, 1301 (D. Utah 2021) (quoting *Gunn v. Minton*, 568 U.S. 251, 259 (2013)). Even assuming Plaintiff's first claim raises a federal issue relating to federal immigration policy, Plaintiff fails to sufficiently allege that the effect, if any, of Elbaum's deportation order on his First Amendment rights is the central point of dispute in this matter. Rather, as explained above, this matter also involves issues relating to interpretation of state business and contract law in relation to NPEC's status as a business entity and the Settlement Agreement's enforceability against Miller. Elbaum's constitutional rights have little to no bearing on either issue. The court also notes that in *NPEC v. Miller*, the underlying state case, the central point of dispute was initially NPEC's state law fraud claim against Miller. Plaintiff acknowledges that during nearly ten years of proceedings, the state court has declined to address the implications of Elbaum's deportation order (ECF 1 ¶¶ 34, 47). This suggests Elbaum's

8

deportation order is not central or even relevant to resolving the issues that are actually disputed between Miller and Elbaum. Plaintiff thus fails to identify a federal issue that is actually disputed.

### iii. Federal issues raised in the Complaint are not substantial

In determining whether the federal issues raised are "substantial," the court "look[s] to the importance of the issue to the federal system as a whole." *Weber County*, 2018 WL 3747846, at *7 (quoting *Gunn*, 568 U.S. at 260). More specifically, "if a claim does not present 'a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous . . . cases,' but rather is 'fact-bound and situation-specific,' then federal question jurisdiction would generally be inappropriate." *Becker v. Ute Indian Tribe of the Uintah and Ouray Reservation*, 770 F.3d 944, 947–48 (10th Cir. 2014) (quoting *Empire Healthchoice*, 547 U.S. at 690). In *Billings*, for example, the court reasoned that "[i]n order to resolve the federal issue in this case (i.e., whether Plaintiff violated federal immigration laws, thereby supporting Defendants' decision to terminate Plaintiff for cause), the fact-finder must make detailed factual determinations" and that "the fact that the federal issues in the present case are bound up in the facts of the case provides further support for the Court's conclusion that federal jurisdiction is lacking." *See Billings v. VIA Information Tools, Inc.*, No. 07-cv-13392, 2007 WL 9757579, at *7 (E.D. Mich. Sept. 26, 2007).

Here, Plaintiff's claims are fact-bound and situation-specific. The second and third claim involve facts relating to specific provisions of NPEC's articles of organization and the Settlement Agreement that have no relation to federal issues of law. To the extent Plaintiff's first claim raises a federal issue of immigration or constitutional law, determining the effect of Elbaum's deportation order on his First Amendment rights calls for the determination of factual issues specific to Elbaum's situation. Similar to *Billings*, any federal issues in this case would be bound up in the facts of Elbaum's situation and its impact on Miller specifically. Resolving this dispute that

"involve[s] only the conduct of private parties" would not be of importance to the federal system as a whole. *See Billings*, 2007 WL 9757579, at *7. Plaintiff therefore fails to raise a federal issue that is substantial.

>       iv.   *Federal and state balancing of judicial responsibilities is disturbed*

In *Grable*, the Supreme Court explained that "even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Grable*, 545 U.S. at 314–15. The court must therefore make "an assessment of any disruptive portent in exercising federal jurisdiction." *Id.* Finding federal jurisdiction under the *Grable* test is appropriate where "the effect of finding jurisdiction would be 'microscopic'" in that only a rare state case "would raise a contested matter of federal law." *See Weber County*, 2018 WL 3747846, at *7 (quoting *Grable*, 545 U.S. at 315). On the other hand, finding jurisdiction under *Grable* disrupts the federal-state balance where doing so would "herald[] a potentially enormous shift of traditionally state cases into federal courts" and result in a "horde of original filings and removal cases." *Id.* (quoting *Grable*, 545 U.S. at 318–19).

For example, in *Mayhew*, the court determined that the issue of whether the Personal Responsibility and Work Opportunity Act (PRWORA), 8 U.S.C. § 1621(a), "prohibit[s] Maine municipalities from paying General Assistance to federally ineligible aliens and prohibit[s] [the Maine Department of Health & Human Services] from reimbursing municipalities for benefits paid to such aliens" was not a substantial federal question. *See Maine Mun. Ass'n v. Mayhew*, 64 F. Supp. 3d 251, 260, 267 (D. Maine 2014). The court reasoned that, "[e]ven though immigration

10

policy is largely a federal concern, in the context of this internecine dispute between elected Maine officials, the federal court would risk meddling in a dispute that resonates with state governmental and policy concerns." *Id.* at 267.

Here, exercising federal jurisdiction over this matter would be decidedly disruptive to the division of labor between state and federal courts. The fact that this case has been litigated in the state trial and appellate courts for nearly a decade suggests that the appropriate division of labor in this matter would be for the federal court to decline jurisdiction. Moreover, allowing Miller to bring claims asking for determination of the constitutional rights of a noncitizen in a case involving only state law claims has the potential of inviting a horde of cases into federal court that would otherwise remain in state court. As in *Mayhew*, while the court acknowledges that federal immigration law and policy is a federal concern, the case at hand stems from a dispute involving contracts and business dealings between private individuals that resonates with issues of state law. For these reasons, this case does not a raise a substantial question of federal law, and Plaintiff has not met his burden to establish subject matter jurisdiction. Accordingly, the undersigned RECOMMENDS that the court GRANT Defendant's Motion to Dismiss (ECF 9) and DISMISS the Complaint (ECF 1) for lack of subject matter jurisdiction.

3.  Standing

Defendant's final argument for dismissal is that Miller lacks standing to bring his claims. Defendant notes that this court has already dismissed claims asserted by Miller against NPEC for lack of standing in *Miller v. Fluent Home, LLC*, No. 2:20-cv-000641-HCN-JCB, 2021 WL 8086367 (D. Utah March 18, 2021) (ECF 15 at 5). Because the court has found subject matter jurisdiction lacking on other grounds, the court does not reach the issue of Miller's standing to bring claims against NPEC.

### B.    Plaintiff's Motion for Expedited Discovery

Plaintiff seeks expedited discovery regarding whether Elbaum's final deportation order "has been vacated or is otherwise ineffective," arguing good cause exists for this discovery as it "could resolve the case immediately" (ECF 10 at 3). Defendant opposes this motion on the ground that the court lacks subject matter jurisdiction (ECF 11 at 3). Plaintiff replies that discovery regarding whether Elbaum "is lawfully present in the United States should bring this action to a quick close" (ECF 12 at 3). In light of the recommendation to dismiss the Complaint for lack of subject matter jurisdiction, the court DENIES Plaintiff's Motion (ECF 10) as moot.

### RECOMMENDATION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that Defendant's Motion to Dismiss (ECF 9) be GRANTED and Plaintiff's Complaint (ECF 1) be DISMISSED without prejudice for lack of subject matter jurisdiction.

### ORDER

In light of this recommendation, IT IS HEREBY ORDERED that Plaintiff's Motion for Expedited Discovery (ECF 10) is DENIED as moot.

### NOTICE

Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object. Within **fourteen (14) days** of being served with a copy, any party may serve and file written objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 4 August 2023.

Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah